# COURT OF APPEALS.

## · March 20, 1923.

## THE PEOPLE v. HERBERT S. HARVEY.

### (235 N. Y. 282.)

(1) BRIBERY—ACT CONSTITUTING CRIME.

An offer or promise to give a sum of money to a county detective with the intent to influence him in his acts and proceedings respecting the prosecution of a third person who was under arrest constitutes the crime of bribery. (Penal Law, § 378.)

(2) SAME—CREDIBILITY OF WITNESSES AND WEIGHT OF THEIR TESTIMONY FOR THE JURY.

Where all of the witnesses for the prosecution on trial of an indictment for bribery had criminal records and to meet their testimony the defendant simply introduced evidence of his previous good standing and character, it was for the jury to say whether or not they believed the witnesses, whether the evidence proved the defendant guilty beyond a reasonable doubt, or whether, considering the evidence of the defendant's good character, the reputation of the witnesses, and discrepancies in their testimony, the defendant was not guilty.

.3) SAME—WHEN TESTIMONY AS TO PRIOR OR SUBSEQUENT IRREGULARITIES OR OFFENSES INCOMPETENT.

In order to establish the crime of bribery it was incompetent to prove that the defendant, previous to the offense charged, had committed other irregularities or offenses, or that, after the crime charged; he had been willing to break, or had broken the law, where the evidence offered did not tend to show the intent, motive, absence of mistake or accident, or a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the others.

(4) SAME.

The admission, therefore, of testimony that defendant had previously to the commission of the crime charged, interceded with the sheriff for a man charged with violating the Highway Law or intoxication; that subsequently he had received a stolen car for a small consideration from the one whom it is charged he attempted to save from prosecution by the commission of the bribery here alleged and that subsequently defendant agreed to protect the same person and another in their commission

of crime for a stated weekly payment, constitutes reversible error.  The testimony does not come within any of the exceptions to the general rule that the People cannot prove an offense charged by showing the commission of earlier or subsequent offenses, nor was it competent upon cross-examination to the extent to which it was carried.

People v. Harvey, 202 App. Div. 810, reversed.

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 17, 1922, which affirmed a judgment rendered at a Trial Term for the county of Nassau upon a verdict convicting the defendant of the crime of bribery.

*James S. Darcy* and *Charles H. Bailey* for appellant.  The learned trial court committed reversible errors in receiving incompetent and irrelevant evidence that was most prejudicial to the defendant.  (People v. Sharp, 107 N. Y. 427; People v. Shea, 147 N. Y. 78; People v. Fitzgerald, 156 N. Y. 253; People v. Molineux, 168 N. Y. 264; People v. Grutz, 212 N. Y. 72; Boyd v. United States, 142 U. S. 450; Wigmore on Evidence, § 320; Mayor v. People, 80 N. Y. 364; People v. Shulman, 80 N. Y. 373; People v. Dimick, 107 N. Y. 13; People v. Peckens, 143 N. Y. 576; People v. Duffy, 212 N. Y. 57.)

*Charles R. Weeks, District Attorney* (*Charles I. Wood* of counsel), for respondent.  The trial court committed no prejudicial error in the admission or exclusion of evidence.  (People v. Sharp, 107 N. Y. 427; Pierson v. People, 79 N. Y. 424; People v. Molineux, 168 N. Y. 265; People v. DeGarmo, 179 N. Y. 130; People v. Grutz, 212 N. Y. 72; People v. Thau, 219 N. Y. 39; People v. Zucker, 20 App. Div. 363, 154 N. Y. 770; People v. Van Tassel, 26 App. Div. 445, 156 N. Y. 561; People v. Katz, 209 N. Y. 311; People v. Duffy, 160 App. Div. 385, 212 N. Y. 57; People v. Cassidy, 213 N. Y. 388.)

CRANE, J.:

At a term of the Supreme Court held in and for the county of Nassau in June of 1921, the defendant was convicted of the crime of bribery, and sentenced to state prison. The judgment of conviction was affirmed by the Appellate Division for the second department, two of the justices dissenting, the presiding justice granting to the defendant a certificate of reasonable doubt, pending his appeal to this court, on the ground that certain evidence was improperly admitted.

The witnesses against the defendant were Matthew J. O'Neill, a hackman by trade, previously convicted of crime; William G. Hoffman, who gave his business as selling stolen automobiles, in jail awaiting trial for crime; Salvator Salano, in the taxi business, in jail awaiting sentence for crime; Aubrey Pettit, who had pleaded guilty to receiving stolen goods; and Carman Plant, said to be a county detective connected with the district attorney's office in Nassau county, who also pleaded guilty to the crime of receiving stolen goods, and was awaiting his sentence.

Herbert S. Harvey, the defendant in this case, had been sheriff of Queens county and is referred to on the trial as the sheriff, or the old sheriff. He was charged by these witnesses with having paid to Plant, the county detective, the sum of $200, as promised, for having caused the release of O'Neill from a charge of stealing an automobile made against him in the Magistrate's Court of the village of Freeport.

The testimony was to the effect that O'Neill had been arrested on a warrant issued out of this Magistrate's Court, had been arraigned and admitted to bail, pending the hearing, in the sum of $500. Plant had been present in court representing the district attorney's office. Shortly thereafter O'Neill says that he met Harvey at the Belmont Park race track and told him that he was in trouble in Nassau county, over a stolen Ford car. He asked Harvey if he could help him, if he knew Plant. Harvey told the witness to meet him that evening at Tange-

man's Hotel at Flushing and he would let him know. They met as arranged, and O'Neill testifies that Harvey then said: " It will ·cost you $200, and you will be dismissed in the Justice of the Peace Court in Freeport. So I wanted to pay the $200 right there, and the sheriff said, ' No, it is not necessary. After you are dismissed you come down here and pay it.' " A few .days thereafter at the hearing in the Magistrate's Court, O'Neill was discharged. The following night he went to Flushing with Hoffman where he met the sheriff at the hotel and gave him the $200.

Hoffman, who was with O'Neill on this occasion, swears that Harvey was paid the $200 in his presence; that he saw O'Neill count out the money and Harvey accept it. Salano supports these other two witnesses by saying that he was introduced to Harvey by O'Neill and Hoffman in Tangeman's Hotel and that Harvey said: " You are the man that has to give me $100. So I said, ' I don't know. If I have to I will give it to you.' ' Well,' he says, ' That is what these boys have done. They have got to pay $300 or $200, whatever it was, see.' I didn't know, so I gave the $100 to Hoffman, and Hoffman passed it to Mr. Harvey." From the testimony of these three men it further appears that they made a business of procuring and selling stolen automobiles. Aubrey Pettit testified in support of the story detailed by the above witnesses that he met Harvey at the Belmont Park race track and had this conversation: " Mr. Harvey come over to me and asked me if I knew Carman Plant. I said I did. He said Carman Plant has agreed to get that .young fellow standing alongside of him off. He has got a case coming up against him in Freeport. I said, ' I guess if he told .you he could get him off, he will.' That was about all the conversation, as near as I can remember." Continuing he says: " I met Mr. Harvey possibly a week later at the Aqueduct, Queens County Jockey Club meeting, and he told me the next time I went to the city to stop in, he wanted to see me. I did. I stopped in. in possibly two or three days. I don't exactly

remember. I stopped in at Tom Tangeman's restaurant at Flushing. * * * And after possibly we might have had a drink, I don't know, he gave me $200 and he said, ' Give this to Carman Plant.' I did give it to Carman Plant the next day."

The last witness for the People was Carman Plant, the county detective, so called. He swears to having met Harvey at the race track, as detailed by the other witnesses and says that the following conversation took place : " He said ' I understand you have a friend of mine in trouble with an automobile over in Freeport.', I asked him if he meant O'Neill. He said yes. He wanted to know what I had done. I told him what we had done. O'Neill had showed a bill of sale to a fellow by the name of Griffiths, out around Port Washington, and I went down different places to see if I could find him, and could not find any such man, and I had been out on two different nights. I asked him what kind of a fellow O'Neill was. He said O'Neill was all right. * * * He said, ' Well if you can attend there on the 16th, at the court room in Freeport, and tell them what you told me I will get $200 and make you a present of it from O'Neill.' "

After this conversation Carman appeared in the police court on adjourned day and told the police magistrate that he thought O'Neill had been fooled, and that the district attorney wanted the case dismissed, so that he could use O'Neill to try to get the thief. O'Neill was discharged. What Plant told the magistrate was not true. The district attorney had given no instructions to have O'Neill discharged.

To meet all this testimony, Harvey, the defendant, introduced evidence of his previous good character and standing in Flushing, where he lived, but did not take the stand himself.

The charge of the court was quite full and complete, covering all points necessary in a case like this. The justice charged the jury that the witnesses implicated in this charge were accomplices upon whose testimony alone the defendant could not be

convicted. He left it to the jury to say whether or not Pettit and Salano were accomplices, and if the jury found that they were not, then it was for them to say whether the testimony of these two men corroborated the accomplices by tending to connect the defendant with the crime.

I have given this brief outline of the evidence against the defendant and of the trial for the purpose of showing that the testimony furnished by the prosecution, if true, and applied in accordance with the judge's charge, made out a case of bribery against the defendant. The jury, however, were to decide whether the testimony were true.

Section 378 of the Penal Law defining bribery says that a person who gives or offers a bribe or any money to a person executing any of the functions of a public officer with intent to influence him with respect to any act, decision, vote or other proceeding, in the exercise of his functions, is punishable by imprisonment for not more than ten years.

If Harvey offered to give Plant $200 to ease up on O'Neill and procure his discharge, or promised to give him such sum, he was guilty of the crime of bribery, as stated in this section.

The indictment charged this offense. It alleged that Matthew O'Neill was arrested, charged with the crime of criminally receiving stolen property, in the first degree, by one Carman Plant, county detective, in the county of Nassau, and was duly held for examination upon said charge by a magistrate of said county; that the said Herbert Harvey well knowing the premises, wickedly and corruptly did feloniously give and offer to the said Carman Plant the sum of $200 in money with the intent in so doing to influence him, the said Carman Plant, in respect to his acts and proceedings in the exercise of his powers and functions as such county detective in and concerning the said prosecution of Matthew O'Neill.

On the case as submitted to the jurors it was for them to say whether or not they believed the witnesses, whether the evidence proved the defendant guilty beyond a reasonable doubt, or

whether, considering the evidence of the defendant's good character, the reputation of the witnesses, and the discrepancies in their testimony, the defendant was not guilty.

This was not a case where the district attorney was justified in proving that the defendant had committed other crimes. In order to establish the crime of bribery it was incompetent to prove that the defendant, previous to the offense charged, had committed other irregularities or offenses, or that, after the crime charged, he had been willing to break, or had broken the law. Such proof was allowed in this case; it had been challenged on this appeal, and, we think, was of such a nature that it cannot be disregarded as immaterial under section 542 of the Code of Criminal Procedure.

There are three instances of this irrelevant and incompetent testimony.

First. The People were permitted to prove that previous to the offense charged, the defendant, Harvey, had seen, or attempted to see, another justice of the peace or sheriff, regarding a person in no way connected with this case charged with violation of the Highway Law, or else intoxication. The following is the evidence: " Q. Had you ever had any talk, or taken anyone to see Sheriff Harvey, before your trouble in Freeport? A. Yes, sir, I took a man by the name—— Q. Who did you take down there? A. I took a man by the name of Frank Holly, from Valley Stream, and a man by the name of Al. Compton from East Rockaway. Q. Anyone else? A. Yes, a man by the name of Cornwall and a man by the name of De Beau. Q. Were you present at any talk they had with the defendant? A. No, sir, I was present, but not during any of the talk. Q. Did you ever have any talk with the defendant yourself about what this man had gone there for? A. Yes, sir. Q. Tell us what it was. Mr. Baldwin: I object to that, if the Court please, unless it be connected with this case. The Court: I will allow it. Mr. Baldwin: Exception. I object to it on the ground that it is incompetent and irrelevant and not

within the issues framed by the pleadings, and indefinite. A. When I met him on the previous occurrence he told me that Mr. Holly was down there about some man that was arrested for a violation of the Highway Law, and he went down to see the sheriff to have the case straightened out in the Elmhurst police station. I was there in the police station with them when they were down there. I was hacking at the time; that is how I came with them. Mr. Baldwin: I move to strike out the answer as not germane to this case. The Court: I will deny the motion. Mr. Baldwin: Exception."

Later the witness said on cross-examination that the charge against this stranger to this case in the Elmhurst court was intoxication.

The fact, if it be a fact, that Harvey had interested himself in some man charged with violating the Highway Law or with intoxication in the Elmhurst court, and, in order to have the case straightened out went to see the sheriff about it, had nothing whatever to do with the case on trial. If an offense, it was a separate and distinct offense from that charged, and in no way tended to prove it. If no offense, it was equally damaging, for it was an attempt to show that Harvey must have been guilty of the offense charged, because on a previous occasion he attempted to have a person released, held on the charge of intoxication.

That such evidence was not harmless may be gathered from the use which the trial justice made of it in his charge. He said to the jury: "And so they (the People) say that O'Neill having heard or knowing something about Harvey, and having known that Harvey had something to do with the adjusting or fixing, or whatever the term is, of some criminal case previously, that O'Neill went to Harvey to see if he couldn't fix, as the vernacular is, this case, a case of interest to him."

This evidence improperly received, some of us think, in and of itself, would justify the reversal of this conviction.

Second. The People proved that the defendant after the

alleged payment of $200 to Plant, entered into an arrangement with O'Neill and Hoffman, whereby he procured a stolen Hudson automobile worth $2,000 for $600.

It seems to be conceded that this evidence was incompetent, if not in some way connected with the charge of bribery for which the defendant was being tried. Surely proof that the defendant subsequent to committing the alleged bribery had received stolen property from the witnesses against him would not prove or tend to prove him guilty of the crime of bribery. There is no connection between the two offenses, except perhaps in point of time.

The trial justice apparently did not admit the testimony under the rule which in certain cases permits proof of previous or subsequent offenses. It did not tend to show the intent in bribing Plant, motive, absence of mistake or accident, or a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the others. (People v. Molineux, 168 N. Y. 264.)

The theory upon which the evidence was admitted can be gathered from the statement of the justice, that on cross-examination the defendant's counsel had opened the door.

I think this evidence, as taken from the record, will make this point clearer than a general summary of it. " Q. (asked of O'Neill) Now did you tell us on your direct examination that the time you paid this money over to the defendant you had a talk about a Hudson car? A. Yes, sir. Q. Did you deliver a Hudson car? Mr. Baldwin: If the Court please, that is not redirect. The Court: I will allow it, of course. Mr. Baldwin: Then I must have an objection on another ground. I object on the ground, Your Honor, that this question to him about the transaction of the Hudson car has nothing to do with the present indictment, and is not within the issue raised by the indictment. The Court: Overruled. Mr. Baldwin: Exception. Q. Did he pay you for it? A. Yes, sir. Q. How much? A. $600. Q. What kind of a Hudson car was that? A. It was

what they call a Hudson speedster.  *  *  *  The car was worth about $1,800 to $2,000.  Q. What was said about it? A. He asked us to get him a car and Hoffman said he would, I believe.  They were stolen cars and he wanted a Hudson car. He ran it.  A couple of New York detectives took it from him, and we refunded his money back.  In fact, we paid him more than what it cost him.  He said it cost $200 extra to keep things quiet in Flushing.  He further told me he had sold the car for $1,300 to a friend, and he had to refund his money.  Mr. Baldwin: I move to strike out all the testimony as not within the issues of this case.  The Court: I will let it stand.  Mr. Baldwin: Exception."

When Hoffman was upon the stand he was asked on cross-examination by the defendant's counsel whether Mr. Harvey profited one dollar by this transaction, and the witness replied that he did not believe that he had.  He was then asked: " Q. You were asked by the defendant's counsel whether or not Harvey, the defendant, had profited any by this transaction.  Did you ever have any relations with this defendant concerning automobiles at any time?  A. I did.  Q. When did that take place?  When was that talk?  A. That was after the talk about the $200.  Q. What was that conversation?  Mr. Baldwin: I object to that.  The Court: Overruled.  Same exception.  Even if it were not admissible it would be after your cross-examination.  Mr. Baldwin: I disagree with Your Honor on that.  A. Mr. Harvey said he would like us to get him a Hudson speedster for his daughter.  I told him we could get him a Hudson speedster.  He said: ' How long before you can get it? '  I said: ' I can't tell.  You know the boys go out and steal these cars.' We finally got him a Hudson speedster.  That is probably two weeks after we paid him the $200, and I delivered the Hudson speedster to Sheriff Harvey.  Sheriff Harvey paid me six one hundred dollar bills for the Hudson speedster."

This witness then continued to detail at some length how this car had been taken from Mr. Harvey in behalf of the owner;

how the money was raised to pay back Mr. Harvey what he had paid for it, and also that Harvey knew the car had been stolen.

This evidence was given over objection and exception taken by the defendant's counsel, sufficient to raise the question in this court.

This line of examination, in its entirety, in our judgment, was not permitted by that rule of law which in a certain class of cases admits proof of other offenses. That the defendant, subsequent to the commission of bribery, had committed the crime of receiving stolen property, was not the subject of proof on the trial for the offense of bribery. But if we waive this objection and adopt the theory of the trial justice that the defendant's counsel had made it admissible by his cross-examination, the evidence, even then, was carried entirely too far.

If it were competent to show that Harvey had profited out of the transaction involving Plant and O'Neill, this was accomplished when it was shown that O'Neill and Hoffman had procured for him a Hudson car worth $2,000 for $600. It was unnecessary and incompetent to go further into a transaction having no other connection with the bribery charge and show that this Hudson car was stolen, that it was retaken from Harvey by the owner, that O'Neill and Hoffman were obliged to repay Harvey, and then to detail when and how the money was raised to repay him, and all that Harvey said about it.

The trial justice warned the jury regarding an improper application of this testimony. He recognized that it was not admissible under the rule permitting proof of other offenses for he said (referring to this testimony) : " That evidence is in the case, but it is not in the case for the purpose of proving Harvey guilty of that crime, and it is not in the case for the purpose of proving Harvey in any way guilty of bribery, but it is in the case, and properly in the case, because there was some question of whether or not Harvey had other dealings with these witnesses for the People, O'Neill and Hoffman, and whether or not Harvey was profiting at all in the transaction. And so it was

asked by the defendant's counsel of O'Neill, and again of Hoffman, if I recall rightly, whether Harvey got any part of this $200, whether he was going to get something out of it.

"As I have said, it does not make any difference whether Harvey made money out of it or not; he could be guilty of bribery just the same; but if he has in any way profited out of it, then it is right for you to consider it, if it has any bearing on the truthfulness of the claim of the People here. If it does not help you to decide whether O'Neill, Hoffman and the rest of the witnesses called who testified to that transaction, told you the truth, then pay no attention to that evidence at all. If it does help you to pass on the credibility of the witnesses, then you have a right to consider it."

It is difficult to see how witnesses who have testified to paying money as a bribe could add credence to their story by stating that they had later sold to the defendant a stolen car. One story of crime is not strengthened by relating another when both come from the mouth of the same witness.

If, therefore, the trial justice properly admitted this evidence of the purchase of a Hudson car worth $2,000 for $600 as showing that the defendant profited out of the Plant transaction, the witnesses were permitted to go too far when they testified that the car was stolen and related how it was retaken from the defendant.

Third. There was other evidence improperly admitted of an arrangement made with Harvey by O'Neill and Hoffman to furnish protection for their future crimes. Here again the proof of this offense had nothing to do with the case on trial. The witness O'Neill, over objection and exception, was permitted to testify that after this bribery offense had been committed by the payment of $200 he had the following conversation with the defendant: "I spoke to the sheriff about getting protection, for I, Hoffman and Salano. We told him we wanted to operate through this country and sell stolen cars. I told him I thought he could handle this here for us. He said he would

speak to Plant about it.    He told us to come down to Flushing, if he wished, that day.    We went down to Flushing, and he told us we could operate through here for $35 a week, which we agreed to pay.''

This evidence, we think, is excluded by the general rule, that the People cannot prove the offense charged by showing the commission of earlier or subsequent offenses. · To this rule there are the exceptions which have been many times given by this court, and which are stated in People v. Molineux (*supra*). We said:    " The exceptions to the rule cannot be stated with categorical precision.    Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial."    (P. 293.)    (See, also, People v. Sharp, 107 N. Y. 427; People v. Shea, 147 N. Y. 78; People v. Fitzgerald, 156 N. Y. 253; People v. Duffy, 212 N. Y. 57; People v. Marrin, 205 N. Y. 275; People v. Grutz, 212 N. Y. 72; Boyd v. United States, 142 U. S. 450, 458; People v. Thompson, 212 N. Y. 249, 254.)

The objectionable testimony above referred to did not come within any of these exceptions.    It is said by the district attorney that these other offenses might have emphasized the intent which Harvey had in offering Plant $200.    That the defendant had previously interceded with the sheriff for a man charged with intoxication would not bear upon the intent in offering Plant money, neither would the fact that subsequently the defendant received a stolen car for a small consideration from O'Neill; the agreement, if made, to furnish for the future O'Neill and Hoffman protection for $35 a month, would not bear upon the intent which Harvey had in paying Plant on the occasion in question.

The influence which such testimony would have upon the minds of a jury would be to lead them to think that if Harvey had committed all these offenses, or agreed to commit them, he must have been guilty of the crime charged. This is not a legitimate use of such evidence, as a man cannot be found guilty of one crime by proving that he has committed others.

Even if the money were a gift or a present to Plant, it would, none the less, be a crime if it were made because of his illegal acts in behalf of the prisoner, at the request of the giver. The intent is so apparent when the bribe is given or promised under the facts and circumstances of this case, that the introduction of evidence of other and dissimilar offenses cannot be justified as an attempt to prove intent.

For the reasons here stated, the judgments should be reversed and a new trial granted.

HISCOCK, Ch. J., CARDOZO and McLAUGHLIN, JJ., concur; HOGAN, J., concurs in result; POUND and ANDREWS, JJ., dissent and vote for affirmance under the provisions of section 542 of the Code of Criminal Procedure.

Judgments reversed, etc.