[Crim. No. 1909.   Second Appellate District, Division Two.—March 24, 1930.]

THE PEOPLE, Respondent, v. THOMAS E. WASHBURN, Appellant.

Joseph L. Fainer for Appellant.

U. S. Webb, Attorney-General, and W. R. Augustine, Deputy Attorney-General, for Respondent.

THOMPSON (IRA F.), J.—The defendant was indicted for bribery, tried and convicted of the offense, and appeals from the judgment pronounced upon the verdict and from the order denying his motion for a new trial.

The first reason assigned by the appellant for a reversal of the judgment is that the court erred in permitting certain cross-examination of a police officer. The defense endeavored to establish an alibi and evidence was introduced to show that appellant had been working in another part of the city of Los Angeles on the evening in question; that about 11 o'clock in the evening, according to his own testimony, he made an arrest; returned to the station and dictated a report. The bribery is supposed to have occurred before midnight. When the officer was called by defense counsel he was asked to identify the report, which he did, testifying that he remembered its being dictated by the appellant. On cross-examination the witness was asked how long he had known McDonald, the person alleged to have bribed the appellant by giving him between $600 and $700. An objection to this question was properly overruled for the reason that it was preliminary to a showing of the interest and relation of the witness to the other parties, and his bias or prejudice, if any. He was likewise asked if he had ever visited a bath-house run by McDonald, it having been previously testified that this particular bath-house was a "blind" for "bootlegging" business. A similar objection was for the same reason properly disallowed. The witness then answered that he had been at the bath-house three or four times. Thereupon the following occurred:

(A deputy district attorney): "Q. Mr. McDonald made you a present of the ring that you have on your left hand, didn't he? A. He did.

"Q. When? A. I don't know when it was; a year or two ago.

"Q. What was his business then? A. I couldn't say. He had this bathhouse.

"Q. Is that the ring you have on your left hand now? A. Yes sir."

(Deputy district attorney): "Q. May that be offered in evidence, if your Honor please?

"The Court: Very well.

"Defense counsel: If your Honor please, what?

"Deputy district attorney: 'The ring.'

"Defense counsel: We will object to it, as incompetent, irrelevant and immaterial, and having nothing to do with the issues of this case.

"Deputy district attorney: Shows the interest of this witness.

"Defense counsel: I can't see where it could possibly have any connection with this case.

"The Court: Well, possibly it might show interest, Mr. ——. Don't you think counsel have a right to show interest of the witness in any case?

"Defense counsel: Well, I can't see it, your Honor. That is all right, though.

"The Court: Overruled."

The ring was received as an exhibit with the statement by the court that it would be returned later to the witness.
■ It is earnestly urged by appellant that the examination we have just quoted exceeded the bounds of legitimate cross-examination. It is to be observed, however, at the outset, that counsel failed to object on the ground that it was not proper cross-examination. The books abound with declarations to the effect that the objection must be urged in the trial court before it may be availed of on appeal. ■ Again, it is to be noticed that the evidence, with the exception of the ring itself, was all introduced without objection of any kind. The ring could hardly add any injury to what had preceded its physical introduction.
■ Aside from these two factors, however, it is a fundamental rule of cross-examination that the motive of a witness arising from interest, relationship, bias or prejudice may be shown. It can hardly be doubted that if the witness had accepted a ring from a known "bootlegger" he would unconsciously, perhaps, be inclined to excuse another who had accepted money. At least it was proper for the trial judge in the exercise of his discretion to permit the jury to consider the relationship for the purpose of determining

the weight to be given his testimony. (*People* v. *Wong Toy*, 189 Cal. 587 [209 Pac. 543]; 27 Cal. Jur., p. 124, sec. 97.)

█ The next assault upon the judgment can best be stated by saying that the district attorney was permitted by the court to cross-examine one of the witnesses for the prosecution. McDonald testified on his direct examination that on the night of October 5, 1926, one David Morgan, his next door neighbor, drove him from his home at 129 West Fifty-second Street to 4119 Woodlawn Avenue, the place where he said the bribery took place. David Morgan was called to the stand, apparently for the purpose of corroborating the accusing witness. In response to a query concerning his whereabouts on the night in question the witness stated that he had no recollection. Thereupon the district attorney asked him if he knew a Mr. Ledbetter, which was answered in the affirmative without an objection being interposed by defense counsel. Without objection he also testified that he had talked with Mr. Ledbetter in the courtroom on the day he was called to the stand. He was then asked to relate the subject of the talk. Over a general objection that it was incompetent, irrelevant and immaterial he was obliged to state that he asked Ledbetter if the district attorney had a right to send for him that day and the day before. The district attorney then queried, ''You refused to come down and talk with us?'' to which the witness replied, ''Yes sir.'' The witness was next asked, ''Was that because Mr. Ledbetter told you not to?'' To the general objection defense counsel added the ground that it was ''cross-examination of his'' (district attorney's) ''own witness.'' The objection was overruled. The witness answered ''No.'' Then there follows further cross-examination along the same line. The district attorney was undoubtedly able to create the impression before the jury that the reason the witness did not corroborate the testimony of McDonald was because he was for some reason prejudiced against the district attorney's office. True, defense counsel did not at first interpose the proper objection, but in view of the fact that he finally succeeded, the court should have recognized the error and sustained the objection. The district attorney was, very patently, cross-examining his own witness without any showing to indicate a right to so pro-

ceed. Whether there was prejudicial error in the action will be considered in a later paragraph.

█ We now come to the most serious question in the case. It is insisted by appellant that the court erred in receiving evidence of another offense separate from the one for which the appellant was being tried. While the witness McDonald was being cross-examined with reference to what the appellant did with the money at the time it was handed to him and where he went immediately thereafter, he was asked the question, "Where did you see him the last time you saw him?" It is apparent from the questions immediately preceding and following the one asked that the examiner intended to direct his query to the night in question. The witness, however, replied, "The last time I saw him I paid him for guarding my plant. He worked for me." Counsel immediately disclaimed a desire to inquire about any other time than the occasion of the alleged bribery. On redirect examination the district attorney· was permitted, over the objection of the defense, to establish that in December, 1928, or more than two years subsequent to the commission of the offense for which the appellant was on trial he had been paid $200 for guarding the liquor of the witness for a period of ten days, or, in other words, that the appellant had assisted him in carrying on an illicit trade in liquor. The testimony was permitted on the theory, and as the jury were instructed, for the sole purpose of tending to prove guilty intent, motive, identity of plan, or guilty knowledge on the part of the appellant. It must be remembered that on the evening of October 5, 1926, the appellant, according to the testimony of McDonald, asked the latter if his plant was worth $750; that after receiving between $600 and $700 he departed and on the following day the liquor was moved from 4119 Woodlawn Avenue to a new location. It should also be assumed that while the appellant was guarding the liquor in 1928 he was doing so as an officer, i. e., clothed in the garb and with the apparent authority of a policeman. He was at the time a member of the police department. We now inquire what the second offense proved. Did it prove motive or guilty knowledge? Can there be any doubt concerning the motive of an officer of the law who accepts $600 or more from a "bootlegger"? The acceptance of such a sum from such a source can hardly

be said to be an equivocal act. In *People* v. *Cook*, 148 Cal. 334 [83 Pac. 43, 46], we read: "When some distinct offense is so connected with the crime charged in the indictment that proof of the former, in connection with other evidence, would sustain a probable inference of guilt as to the latter, such distinct offense may be proved—as, for instance, to show a motive on the part of defendant to commit the crime charged, *or the intent with which an equivocal act has been done*, such as passing a counterfeit bill or receiving stolen goods. The general rule and its exceptions are very elaborately discussed in the opinion of Justice Warner in the celebrated case of *People* v. *Molineux*, 168 N. Y. 290 [62 L. R. A. 193, 61 N. E. 286], where many of the principal authorities are cited. The result of the discussion, I think, may be summed up in the proposition that evidence which is relevant to any material fact in issue in a criminal case cannot be excluded because it may prejudice the defendant by proving him guilty of other crimes than that for which he is on trial." (Italics ours.) ■ Can it be said that the testimony was relevant to the issue of guilty knowledge, i. e., whether the payor was in fact a "bootlegger"? In the opening statement of counsel for the defense he said that he intended to prove that as early as January 7, 1926, the appellant and other officers had raided McDonald's plant at 6021 South San Pedro Street. While this statement is not evidence, nevertheless it indicated that counsel did not intend to rely upon the fact that appellant did not know the business of his accuser, but rather upon proof tending to establish that he did not accept the money. In appellant's own examination he confessed his knowledge of the reputation of McDonald. Guilty knowledge, as we have used that term, was, therefore, not in issue, and it cannot be said that evidence of a separate offense was relevant thereto.

Nor do we perceive how, aside from the fact that the recital of the facts constituting the separate offense would tend to create the impression that appellant was possessed of a corruptible mind, the testimony tended in any degree to prove design or plan. We may observe, as was done in *People* v. *Glass*, 158 Cal. 650 [112 Pac. 281, 294], that "in the everyday affairs of life, if it should be established to the satisfaction of a jury that upon another and distinct occa-

sion a defendant had offered or solicited a bribe, it would have great weight with them in determining whether in the instance charged he had been guilty of the offense. It would establish, at least, that he was the sort of man who would be willing to do this criminal act. Such was the line of reason and argument here employed. Yet such matters are never legal evidence. In discussing precisely such a case, where evidence had been admitted against the defendant charged with bribery, of a former act of like character, the Court of Appeals of New York says: 'The mental ability and disposition of the defendant to commit a crime of this sort, while it might persuade a jury, raises no legal presumption. . . . Yet the inference drawn by the prosecuting officer, and permitted by the court, left it for the jury to say that the desire of Sharp, manifested by the offer of a bribe in one instance, was the same desire which led to the actual giving of a bribe in the other; hence that the two crimes had the same origin. It was put in near the beginning of the trial, and the impression then made must have continued with the jury, and in their minds colored and deepened, if it did not distort, the subsequent evidence. It did indeed cast a dark shadow upon the defendant's character. It not only tended very strongly to prove the defendant guilty; it was absolute proof, but it was of a different crime from that charged. It was offered and received directly on the main issue, and was of great and persuasive force against him. Such evidence is uniformly condemned, as tending to draw away the minds of the jurors from the real point on which their verdict is sought, and to excite prejudice, and to mislead them. It was improperly received, and the exception to its admission well taken.' (*People* v. *Sharp,* 107 N. Y. 427 [1 Am. St. Rep. 851, 14 N. E. 319].)''

There is another reason, which, when taken into consideration for the purpose of determining the admissibility of this testimony, makes it apparent that the court committed error. The testimony relating to the offense in 1928 was related by the same witness who testified to the bribery in 1926. McDonald was the only witness to the second episode—with the possible exception that the woman from whom McDonald rented the property on Compton Avenue stated that McDonald came to her house with two ''tall, heavy, broad shouldered men'' in plain clothes and that the

appellant in his size resembled one of the men, but that she did not "remember his face exactly." On account of the unsatisfactory identification, if it can be called identification, and the fact that no incriminating circumstances are connected with her testimony, makes it entirely proper for us to say that McDonald was the sole witness to the evidence complained of. What possible weight could it lend to his other testimony? Its only effect was to arouse and influence the minds of the jury against appellant. An almost identical situation, in this regard, was before the Court of Appeals of New York, in *People* v. *Harvey,* 235 N. Y. 282 [139 N. E. 268, 273], and it was there said: "It is difficult to see how witnesses who have testified to paying money as a bribe could add credence to their story by stating that they had later sold to the defendant a stolen car. One story of crime is not strengthened by relating another when both come from the mouth of the same witness. . . . The influence which such testimony would have upon the minds of a jury would be to lead them to think that if Harvey had committed all these offenses, or agreed to commit them, he must have been guilty of the crime charged. This is not a legitimate use of such evidence, as a man cannot be found guilty of one crime by proving that he had committed others." Nor was the error cured by the attempt of the trial judge to confine its effect to certain issues. Not being relevant to any issue it should not have been admitted at all.

We deem it unnecessary to go to a lengthy *résumé* of the testimony adduced to determine whether the errors found to have been committed require a reversal of the judgment under section 4½ of article VI of the Constitution. The appellant relied, as has been indicated, upon his denial that he accepted any money, plus the establishment by a number of witnesses of an alibi. To say the least, the state of the evidence, as we read it, renders the case a doubtful one. Indeed, the testimony improperly admitted may well have been the cause for the verdict of the jury in this case.

Judgment and order reversed.

Craig, Acting P. J., and Norton, J., *pro tem.,* concurred.