[Crim. No. 882. Fourth Dist. Mar. 17, 1954.]

THE PEOPLE, Respondent, v. GEORGE ROBERT ALEXANDER, Appellant.

Lester N. Gonser for Appellant.

Edmund G. Brown, Attorney General, and Martin M. Ostrow, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was charged with and was convicted by a jury of burglarizing the Palm Motel on December 31, 1952. A motion for new trial was denied.

The claim on this appeal is that the evidence was insufficient to justify the verdict; that the testimony of an accomplice was not sufficiently corroborated; that evidence of similar offenses was inadmissible; that there was no proper identification of the defendant; that improper and inadequate instructions were given; and that the court erroneously refused to give certain proffered instructions offered by defendant.

The evidence shows that on December 31, 1952, between 10 and 11 a. m., two men burglariously entered the office of the Palm Motel. One was identified and conceded to be George Rathwick, who pleaded guilty to the offense charged. At

the time, they asked to be shown a room by the manager. Defendant Alexander stayed in the office, which was otherwise unoccupied at the time, presumably to read a newspaper. Rathwick was shown a room and thereafter he told the manager that he wanted to bring his prospective bride back to look at it. Rathwick and Alexander departed. About one hour later the manager discovered that $90 in cash was missing from the cash drawer where Alexander had been seated during the manager's absence.

The accomplice Rathwick testified at the trial that he and Alexander had planned and had committed this burglary, and that they subsequently had committed other similar burglaries, using the same scheme and design. He stated that about 9:30 that morning he picked up Alexander at Hart's restaurant in Fresno, after he had taken his wife to work at a nearby store; that after talking over their plans they went to the Palm Motel and committed the burglary as described; that subsequently, they split the proceeds of the $90 that Alexander had taken. He then testified that thereafter, about January 2d, 1953, they went to the Casa Grande Motel in Madera; that he told the manager he was interested in looking at a room for himself and his prospective bride; that Alexander remained in the office and read a book; that Alexander removed cash from the till drawer and they subsequently split the proceeds.

The clerk of that motel identified Rathwick and Alexander as "the two boys" involved and testified to about the same set of facts indicated by Rathwick. Alexander subsequently pleaded guilty to this charge.

The evidence further shows that on January 10, 1953, Alexander, Rathwick and one Fred Wright went to the Phylnor Motel in Modesto and attempted to use the same scheme, but when the switchboard operator would not assist him in looking at the rooms, Rathwick made his own investigation and returned. He then told the clerk he would bring his bride and would be back at a later time. Alexander left with him and joined Wright, who remained in the car.

On that same day Rathwick and Alexander entered the Anderson Motel in Modesto and Wright remained outside in the car. The same procedure was followed and Alexander and Rathwick returned and divided with Wright the money they had obtained. This performance was again repeated that same day by "the three boys" at the Villa Motel in

Modesto. Alexander pleaded guilty to the burglaries involving the Villa and Anderson motels.

As to the Palm Motel, the one here under consideration, one of the owners, C. Gambucci, Sr., positively identified Rathwick as the one who asked to see the room, and stated that the other man seated himself in the office; that he did not pay much attention to him, but the two left in an automobile that had been parked near the office building. This office building was attached to the living quarters of the complaining witness, which were so constructed that there was a glass window separating the living room and the office. The window was covered by a Venetian blind and by a road map which was attached to the lower part of it.

Vickie Gambucci, granddaughter of the complaining witness, aged about 12½ years and in the seventh grade in school, testified she had been sleeping in these quarters that morning; that she looked through the Venetian blinds into the office and saw defendant Alexander sitting there reading a paper; that her grandfather had gone with another man to show a room; that she was within a few feet of defendant and would recognize him if she saw him again; that the man she there saw was the defendant who was then seated at the counsel table in a blue suit (indicating defendant Alexander); that she did not recognize Rathwick; that she saw defendant before at the preliminary examination, and that after looking at him through the Venetian blinds she also saw a dark blue Chevrolet coupé parked nearby and that she then went back to bed. Counsel for defendant confronted her with her testimony taken at the preliminary examination. On cross-examination, in response to a question as to whether she would be able to identify the defendant as being the man she saw sitting in the chair, she replied: "I am pretty sure." Pointing to defendant she said: "He looks something like that one there . . . in the blue suit." On redirect examination she stated she had a side view of his face and from that view she was able to identify him.

Defendant testified that he had known Rathwick since his school days; that he (Alexander) was working at his place of employment on December 31, 1952, from 8 a. m. to 1 p. m., in taking inventory, and did not enter the Palm Motel that morning; that he did, however, at a later date, enter the other motels at Modesto and Madera, and pleaded guilty to those offenses. He stated that if the same operations

were used at the Palm Motel as he had used at the other motels, some other person must have been with Rathwick on that occasion, and intimated that it might have been Fred Wright.

Several witnesses, employed where defendant Alexander was employed, testified in his behalf to the effect that during the days of December 29th, 30th and 31st, defendant worked as a clerk for 12 hours; that he was off from work one day during that interval but they believed it to be December 29th; that in their opinion he was working on the morning of December 31st, because he shook hands with some of them about noon on that day and wished them a Happy New Year; and that they did not believe he left the office more than five or ten minutes that morning.

In rebuttal the People produced the former wife of Rathwick, who testified that on the morning of December 31st she was living with Rathwick; that between 9:30 and 9:45 a. m. he took her to work in his car; that he let her out and that he proceeded up the alley; that he then met defendant Alexander who was standing near Hart's restaurant, one block away; that she later, that day, accused her husband of meeting Alexander on the corner and he denied it but later admitted that to be a fact.

Fred Wright was then sworn as a witness and testified he was not with Alexander and Rathwick at the Palm Motel on December 31st. Defendant denied meeting Rathwick at the Hart's Café on the morning of December 31st, but claims he did meet him there the following week. Defendant's mother testified she drove defendant to work on the morning in question.

 It is apparent from the testimony of the accomplice that defendant Alexander aided and abetted him in the commission of the crime; that there was sufficient corroboration and identification of the defendant indicating that he was the one with Rathwick on that occasion. This was a factual question for the determination of the jury, notwithstanding the claimed alibi of the defendant. (Pen. Code, § 1111; *People* v. *Negra*, 208 Cal. 64 [280 P. 354]; *People* v. *Trujillo*, 32 Cal.2d 105 [194 P.2d 681]; *People* v. *Griffin*, 98 Cal.App. 2d 1 [219 P.2d 519]; *People* v. *Gallardo*, 41 Cal.2d 57 [257 P.2d 29].) The rule relating to the quantum of evidence necessary to sustain a criminal conviction is sufficiently set out in *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].

Passion or prejudice on the part of the jury causing it to

disregard the evidence produced by the defendant by reason of the testimony pertaining to other similar offenses, as claimed by the defendant, is not established, particularly since the court fully instructed the jury that such evidence was admitted only for the limited purpose of showing the plan, scheme or system of defendant and others to burglarize offices of motels. The facts relied upon in *People* v. *Singh*, 11 Cal.App.2d 244 [53 P.2d 403], are not synonymous.

█ The evidence concerning other offenses was admissible to show common design and pattern even though they were committed shortly *after* the offenses charged in the information, where there was no conflict in the scheme, plan or design. (*People* v. *Talbot*, 220 Cal. 3, 17 [28 P.2d 1057] ; *People* v. *Ferdinand*, 194 Cal. 555, 560 [229 P. 341] ; *People* v. *James*, 40 Cal.App.2d 740 [105 P.2d 947] ; *People* v. *Craig*, 111 Cal. 460, 467 [44 P. 186] ; *People* v. *Peete*, 28 Cal.2d 306 [169 P.2d 924] ; 8 Cal.Jur., p. 69, § 173.)

█ It is next argued that the accomplice was not a competent witness under section 1111 of the Penal Code to establish that there were other distinct offenses committed, citing *People* v. *Washburn*, 104 Cal.App. 662 [286 P. 711]. No prejudicial error was committed in this respect since defendant admitted having committed these offenses or they were otherwise sufficiently established. (*People* v. *Clough*, 73 Cal. 348 [15 P. 5].)

█ The contention that the witness was not authorized to describe the system and scheme employed in respect to the attempted burglary of the Phylnor Motel in Modesto on January 10, 1953, since she did not sufficiently and independently identify the defendant as a participant therein, is without merit since it did not result in prejudicial error, particularly where the accomplice, over objections, implicated the defendant in such offense, and where the defendant made no objection to the testimony of the witness when offered. The objection to the testimony of such witness may not be raised for the first time on appeal. (*People* v. *Goff*, 100 Cal. App.2d 166, 171 [223 P.2d 27].) At least no miscarriage of justice resulted. (*People* v. *Liss*, 35 Cal.2d 570, 575 [219 P.2d 789] ; Cal. Const., art. VI, § 4½.)

█ Complaint is next made that the court erroneously received in evidence a certified copy of the minutes of the court and of the information to which defendant entered a plea of guilty of the two charges of burglary committed in

Modesto, as above indicated. No prejudicial error resulted where the record received in evidence showed the identity of the accused in connection with the crime, where the facts surrounding these convictions were described by witnesses as indicated, and where defendant subsequently admitted the convictions.

Lastly, defendant argues that the court erroneously instructed the jury as to the purpose for which evidence of the similar offenses was admissible. The instruction, generally speaking, follows the language of CALJIC Instruction No. 33, page 54 et seq. Defendant's attack upon the instruction, as given, is that it told the jury that evidence of similar offenses was offered for the purpose of showing that the *defendant committed crimes other than the one of which he is accused,* and was not limited to the purpose of showing a plan and scheme. A fair reading of the instruction, when considered as a whole, and reasonably interpreted, shows that the court did instruct the jury that such evidence was received "not to prove distinct offenses or continual criminality," but for the "limited purpose only" of showing the identity of the accused, the intent to commit the act charged, or whether it tended to prove the existence of a plan, scheme or system used by defendant and another, or others, to burglarize the offices of motels. ██ An instruction so limiting the application of such evidence was orally given by the trial judge at the time the evidence was admitted. No further cautionary instruction was requested by defendant in this respect and he may not now be heard to complain for the first time on appeal. (*People* v. *Warren,* 16 Cal.2d 103, 116 [104 P.2d 1024]; *People* v. *Zimmerman,* 11 Cal.App. 115 [104 P. 590]; *People* v. *Richards,* 74 Cal.App.2d 279, 291 [168 P.2d 435]; *People* v. *Willard,* 92 Cal. 482 [28 P. 585], and cases heretofore cited on the subject. See also 8 Cal. Jur., p. 60, § 168; 8 Cal.Jur., pp. 65-66, § 170.)

Certain general instructions offered by defendant were properly refused as covered by other general instructions given. No prejudicial error appears in this respect.

The same questions here presented were presented to the trial court on a motion for new trial, and were considered by it, together with the evidence produced. It is apparent that it felt that grounds for a new trial were not indicated. The record supports this conclusion. ██ In passing on a motion for new trial the judge has very broad discretion

and is not bound by conflicts in evidence. Reviewing courts are reluctant to interfere with the decision of the trial court in denying or granting such a motion unless there is a clear showing of an abuse of discretion. (*People* v. *Robarge*, 41 Cal.2d 628 [262 P.2d 14].)

Judgment and order affirmed.

Barnard, P. J., and Mussell, J., concurred.