[Crim. No. 990. Second Appellate District, Division One.—March 7, 1924.]

## THE PEOPLE, Respondent, v. W. A. STUTSMAN, Appellant.

[1] CRIMINAL LAW—OBTAINING MONEY BY FALSE PRETENSES—SIMILAR TRANSACTIONS—EVIDENCE.—In a prosecution for obtaining money by false pretenses, the charge growing out of a purported sale by defendant to the prosecuting witness of an interest in certain mining claims, evidence of a similar transaction between defendant and another about six months later than the one involved in said prosecution is admissible for the purpose of showing system or design; and it is not necessary that the two transactions be identical, so long as they are similar and of comparatively recent commission.

[2] ID.—SIMILAR TRANSACTIONS—INTENT—REBUTTAL.—In such prosecution, while it is proper for the prosecution to show that defendant had apparently committed other acts of a kind similar to the one of which he is charged in the information, it is prejudicial error to deny defendant the right to introduce evidence for the purpose of showing that in selling an interest in the mining claims in question he had no guilty intent, but, on the contrary, was acting in all respects honestly and within his legal and moral bounds.

---

(1) 16 C. J., p. 597, sec. 1162.    (2) 25 C. J., p. 650, sec. 86.

1. Evidence of other crimes in prosecution for obtaining money or property by fraudulent means, notes, 10 Ann. Cas. 906; 17 Ann. Cas. 464; 62 L. R. A. 193; 43 L. R. A. (N. S.) 667. See, also, 12 Cal. Jur. 472; 11 R. C. L. 867.

APPEAL from a judgment of the Superior Court of Los Angeles County. Sidney N. Reeve, Judge. Reversed.

The facts are stated in the opinion of the court.

Jud R. Rush and William B. Beirne for Appellant.

U. S. Webb, Attorney-General, and John W. Maltman, Deputy Attorney-General, for Respondent.

HOUSER, J.—In each of two counts of an indictment defendant was charged with the commission of the crime of obtaining money by false pretenses. The jury returned a verdict of guilty as to one count and disagreed as to the other count. From a judgment of conviction and an order denying defendant's motion for new trial defendant appeals to this court.

The evidence was sufficient to sustain the finding by the jury of the following facts: T. B. Young and Mrs. T. B. Young were the owners of certain mining claims located on the American River, in Placer County. On July 15, 1918, they executed an instrument in favor of defendant, of which the following is a copy:

"American River, Cisco, July 15, 1918.

"This is to certify that we, the undersigned owners of two certain gold placer mining claims known as the Gypsy Queen and the Hidden Treasure, situated on the north fork of the American River, at the intersection of the Sailor Ravine, hereby agree to deliver the same by good and sufficient deed, free from mortgage and incumbrance, to W. A. Stutsman, or his assigns, for the sum of Four Thousand Dollars, upon the following terms: Two Thousand Dollars on or before Sept. 15, 1918; One Thousand Dollars on or before Dec. 15, 1918; One Thousand Dollars on or before March 15, 1918.

"It is understood that W. A. Stutsman is to arrange his commission or profit on the sale over and above the Four Thousand Dollars herein stipulated. The price and profit to be so set and arranged by said Stutsman.

"Said deed to the Hidden Treasure to be signed by T. B. Young.

"Deed to the Gypsy Queen to be signed by Mrs. T. B. Young.

"(Signed)    T. B. YOUNG.

"MRS. T. B. YOUNG."

Defendant testified that about the first part of November, 1918 (which was after the first payment on the foregoing offer would have been due had the offer been accepted), he arranged with Young to do the assessment work on the claims and look after the property, and that Young told defendant that defendant could take the property and handle it and organize it on any basis he saw fit, as long as the Youngs did not have to part with the title until they received the purchase price of $4,000. It was then orally agreed between defendant and Young that a deed of the property to defendant would be executed by the Youngs and placed in escrow, with instructions that no title pass until the full amount of $4,000 was paid to the grantors. About six months later, that is, on May 24, 1919, the Youngs signed an instrument by which they agreed "to deliver by good and sufficient deed, relinquishing all our right, title and interest therein to W. A. Stutsman, to own and control thereafter, upon the fulfillment of the terms as herein set forth, viz.:

"Said claims are situated at the mouth of Sailor Ravine on the north fork of the American River, six miles south and one mile east of Cisco, Placer County, Calif. Said claims are known and recorded as the Hidden Treasure and Gypsy Queen.

"The purchase price of said claims is $4,000 and is payable in cash at the time of the transfer of title.

"Said transfer is to be in the following manner: Immediately upon receipt of deed properly filled out, the undersigned owners will place the same in a designated bank at Auburn, properly signed and ready for recording; said bank is to hold and not record until the full amount of Four thousand and no/100 dollars is paid into said bank and the payment of the same to the undersigned owners.

"Time is the essence of this agreement to deliver.

"(Signed)    T. B. YOUNG.

"MRS. T. B. YOUNG."

"Witness: JAMES R. SMITH."

In pursuance of the terms of the foregoing instrument, on June 3, 1919, a deed was executed by the Youngs and fifteen days later was by them deposited in a bank, with oral instructions to the officers of the bank to deliver the deed only upon receipt of $4,000 to the credit of the Youngs. In the count of the indictment under which defendant was convicted it was charged that in the latter part of April, 1919, defendant stated to Charles Van Wey that he was interested in the mining claims belonging to the Youngs; that he had an option to buy them; that he had paid either $4,000 or $5,000 on account of the purchase price; that the claims were valued at $10,000; that he was forming a pool to pay off the balance of the money and was selling units of interest and that he wanted Van Wey to invest therein. The evidence further showed that, relying upon defendant's said representations, Van Wey did pay to defendant the sum of $500 for an interest in said claims, but that he had never received from defendant any evidence of ownership thereof, nor had any part of the $500 been returned to Van Wey.

Although several alleged false representations by defendant were set out in the count of the indictment upon which the conviction was had, the prosecution relied upon and confined itself to the proof of the single misrepresentation that defendant had an option on the Young claims.

[1] Defendant contends that prejudicial error as against him was committed by the court in admitting evidence of an alleged similar transaction which occurred between defendant and a man named Engel at a time about six months later than the one of which the jury found defendant guilty of obtaining money by false pretense. There was no substantial difference between the representations made by defendant to Van Wey and those which were made by him to Engel, excepting that in the negotiations with Engel defendant proposed to sell an interest in five claims, rather than two claims, and which five claims included the two Young claims, and that defendant stated that the price of the Young claims was $8,000 instead of $10,000. The first point made by defendant hereunder is that because at the time he negotiated with Engel the deed was in escrow, the statement by defendant that he had an option to purchase did not amount to a misrepresentation.

Defendant urges that the admission in evidence of similar transactions was prejudicial to him; but that contention is disposed of by a line of authorities in this state holding that in cases of this character such evidence is admissible where the object thereof is to show system or design. (*People* v. *Whalen,* 154 Cal. 472 [98 Pac. 194]; *People* v. *McGlade,* 139 Cal. 66 [79 Pac. 600]; *People* v. *Arnold,* 17 Cal. App. 68 [118 Pac. 729]; *People* v. *Hansen,* 62 Cal. App. 105 [216 Pac. 399].)

From the record herein it plainly appears that the evidence was offered "for the purpose of showing system," and that the court instructed the jury that such evidence should be considered "simply for the purpose of showing system and design." It is obvious that while there were some variations in the procedure adopted by defendant as between the Van Wey transaction and the Engel transaction, yet they presented one general scheme to obtain money by false pretense. The evidence adduced in the Engel case was sufficient, *prima facie,* to support the conclusion that defendant was also guilty of an offense similar to the offenses of which he was charged in the indictment, and affects the motive or the intent which actuated defendant throughout the entire matter. The fact that other claims were added by defendant to the two Young claims in making his representations to Engel does not make any substantial difference in the plan to defraud. It is not necessary that the Engel transaction be identical with the Van Wey transaction. All that is required in that regard is that they be similar and of comparatively recent commission. In the case of *People* v. *Hansen,* 62 Cal. App. 105 [216 Pac. 399], there was a difference of eight months between the date of the commission of the offense of which defendant was found guilty and the date of the offense of which evidence was introduced as being a similar transaction; and while the question of the length of time ensuing between the two transactions is not discussed in the opinion, it is held that no prejudicial error resulted from the admission of the evidence.

[2] Defendant also complains that several prejudicially erroneous rulings were made by the court. The first of these has to do with the refusal of the court to permit the introduction of evidence which would have tended to prove that assessment work was performed on the Young claims at the

instance of defendant for the years 1919 and 1920. It is pointed out that the bearing which such evidence would have would be to show a consideration for the "option" which it is claimed was created under the agreement of May 24, 1919, and which was followed by Young depositing the deed with the oral instruction to the officers of the bank to deliver same to defendant on his paying to Young the sum of $4,000; also, that it would have tended to corroborate defendant's testimony relative to the so-called "new agreement" made between defendant and Young in November, 1918, and show that defendant performed his part of the contract.

As has been heretofore indicated, in cases of the nature of that of which defendant is charged, the reason for the admission of evidence as to similar transactions is to show system, or design, or guilty knowledge, or something of that character. Such a matter presents a question of fact just as much as does any other relevant circumstance in the case. It goes without saying that as to any material issue presented by the prosecution the defendant has the undoubted right to make complete rebuttal along any lines included within the rules of evidence. If it was proper for the prosecution to show that defendant had apparently committed other acts of a kind similar to the one of which he was charged in the information, defendant should have been afforded full opportunity to either deny it completely or to explain the transaction in order to show its innocent character. (*State* v. *Germain*, 54 Or. 395 [103 Pac. 521].) If the sale to Engel was in all respects fair and just—if it was based upon an instrument purporting to be an option for which a consideration had passed from defendant to the owners of the property—defendant was entitled to show that fact in order that his good faith might appear in the matter, to the end that no inference of guilt of defendant as to the charge against him might be indulged in by the jury on account of such alleged similar occurrence. Seldom does it happen in cases where the rule permits evidence to be introduced of similar transactions that the defendant is apprised beforehand either of the broad fact that such evidence will be offered, or of the precise nature of the testimony which will be introduced. As to that feature of the case, he is therefore ofttimes greatly embarrassed and considerably handicapped.

It is but just that in such circumstances at least his every right should be accorded him. In the instant case the question of intent was predominant and most vital to defendant's case. The facts concerning the particular charge against defendant were not of that character which would justify the conclusion that defendant's guilty intent was manifest. It was a close question for the jury to decide; and without a finding thereon against defendant no verdict of guilty could have been reached in the case. The ruling by the court of which defendant complains, and which resulted in defendant being precluded from showing primarily that there was a consideration given by him for the option to purchase the property, to the end that in selling an interest in the mining claims described therein defendant had no guilty intent, but, on the contrary, was acting in all respects honestly and within his legal and moral bounds, was an invasion upon and most prejudicial to defendant's legal rights. A consideration of other alleged errors becomes unnecessary.

It is ordered that the judgment and the order denying defendant's motion for new trial be and the same are reversed.

Conrey, P. J., and Curtis, J., concurred.