[Crim. No. 57. Fourth Appellate District.—February 17, 1932.]

THE PEOPLE, Respondent, v. C. W. ELEY, Appellant.

A. Brigham Rose for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendants were jointly charged in an information which will be hereafter referred to as the first information, with the crime of grand theft, it being alleged that they wilfully, unlawfully and feloniously took the sum of $10,000, being the personal property of Charles Joachim and Ida Joachim. They were also charged in a second information with the crime of grand theft, this information containing three counts, in the first of which they were charged with feloniously taking $500 from J. C. Black, and in the second and third of which they were charged with thus taking the respective sums of $351.50 and $485 from one Marie Anderson. The two actions were consolidated and tried before a jury. Both defendants were found guilty of the charge set forth in the first information. The defendant C. W. Eley was found guilty on all three counts of the second information, and the defendant Ella Eley was found not guilty as to said three counts. The defendant Ella Eley was granted probation and judgment was pronounced against the defendant C. W. Eley after denial of his motion for a new trial. The defendant C. W. Eley has appealed from this order and from the judgment.

It is first contended that the evidence is not sufficient to justify the verdict as to either information. Considering first the evidence with respect to the first information, it appears that Charles Joachim and Ida Joachim, husband and wife, were an elderly couple living in Redlands, in San Bernardino County. In July, 1929, they met the defendants, who were then going under the assumed name of William C. Brent and Ella Dostal Brent. At that time, the defendants were the owners of a portion of the land in section 7, township 6 south, range 9 east, S. B. B. & M., located near the town of Thermal in the Coachella Valley, in Riverside County. There is ample evidence that this was rocky mountain land which could not be plowed; that it was unfit for agricultural purposes; and that it was practically worthless. The defendants took the Joachims to a point near Thermal and showed them some land about a mile and a half from said section 7, but located on the floor of the valley, which looked like good agricultural land. During the ensuing few weeks the Joachims purchased three separate parcels, paying a total of $3,200 and receiv-

ing deeds for three separate parcels in said section 7. Following these purchases and about September 20, 1929, the two defendants approached the Joachims telling them they had an opportunity to buy some land belonging to a Mr. J. R. Burns, and that they wanted all the money the Joachims had, with which to make the purchase. The defendants took the Joachims and showed them the land owned by Burns, near Indio. It was agreed that the Joachims would put up $10,000 and the defendants would put up $10,000 for the purpose of buying the Burns property. A written agreement was executed under date of September 20, 1929, between the appellant as first party and Charles Joachim as second party, providing that each party would contribute the sum of $10,000 to pay for the property described, which was the Burns property; that the title thereto was to be held in the name of Joachim; and that each party should own an undivided one-half interest therein. It was further provided that the property should be subdivided and sold under the direction of Brent, and that the profits should be equally divided. This agreement was signed by both defendants and by Joachim. The Joachims withdrew $10,000 belonging in part to Mr. Joachim and in part to Mrs. Joachim, from a building and loan association and paid it to the defendants in Redlands, for the purpose of making the purchase of the Burns land. The defendants took this money and on September 24, 1929, it was deposited in a bank in Los Angeles in the name of Mrs. Brent, in a new account opened that day. Between that day and April 16, 1930, the entire $10,000 was checked out by the Brents by 136 checks, of which 121 were of an amount under $100 and 36 were of an amount under $10. The entire $10,000 was used by the Brents for their own purposes, the defendant Ella Eley testifying: "Well, I don't know what I did with all of it" and the defendant C. W. Eley testifying: "Yes, I could name you I guess 1500 or 2000 more things it went for." It is admitted that the $10,000 was not used for the purchase of the Burns property and that that property was never purchased. The Joachims never received a deed to that land or to any other land in return for the $10,000 paid. The appellant testified that he was unable to purchase the Burns land because of some defect in the title, that he so informed Mr. Joachim, and

that Mr. Joachim told him. to go ahead and buy some other land and to "use his own judgment". There is evidence that the Joachims had been promised quick returns; that Mr. Joachim asked the appellant for money; that on each such occasion the appellant would put them off with various excuses; and that at one time he told them there was an escrow pending in Riverside for the Burns land in question. At another time he told them that he had a man who wanted to buy the land that this $10,000 was to be used in purchasing, that is to say, the Burns land; and that "as soon as the deed was fixed they could have their buyer there to sell it to him and we would get our money back with $5,000 more than the $10,000". Whenever they asked for a deed they were told always that it was in escrow. Mr. Joachim died on November 25, 1929. Thereupon, Mrs. Joachim told the defendants that she was out of money, and the appellant promised to return her money as soon as he could get it, and told her that as soon as he could sell the land she would get her money. Mrs. Joachim repeatedly begged for some money and finally the appellant paid her $500 on December 2, 1929, $200 on January 11, 1930, and $100 on March 6, 1930, telling her each time that he would pay her the rest as soon as he was able to do so. While the appellant himself admits that he told Mrs. Joachim on December 2, 1929, that he would return more of her money as soon as he could, the evidence conclusively shows that at that time he still had $4,000 of her original $10,000 on deposit in the bank. During all of this time the appellant and his wife repeatedly told Mrs. Joachim that they had buyers for the land mentioned in the contract of September 20, and that as soon as they could get matters straightened out they would sell the land. That the appellant did not intend to himself put up $10,000 for the purpose of buying the Burns land is apparent, and it fully appears from his own evidence that he was unable to do so. As showing the intent of the appellant, it fully appears that he sold several pieces of land in section 7 to the Joachims, and several pieces of land in the same section to other parties by showing them better land in the valley, whereas the land actually deeded was located in the foothills several miles away. The appellant admitted that he showed all of these parties the wrong land, the only justification claimed being

that he himself had formerly been shown the wrong land by a real estate agent, and the further unusual defense that the land actually deeded was not quite as far away from the land shown as was claimed by some of the witnesses.

It is contended that the evidence is not sufficient to show the commission of any offense under the provisions of section 484 of the Penal Code, it being also argued upon various technical grounds that the proof is not sufficient to establish an embezzlement. The evidence is entirely sufficient to sustain the verdicts upon the theory of larceny by trick and device (*People* v. *Edwards*, 72 Cal. App. 102 [236 Pac. 944]; *People* v. *Hennessey*, 201 Cal. 568 [258 Pac. 49]).

In reference to the claimed insufficiency of the evidence to support the verdicts under the three counts of the second information, it may be briefly stated that in each instance there was ample evidence that the appellant took the respective parties and showed them lands near Thermal which were good smooth valley lands, fit for agricultural purposes; that on the representation that he was selling each of them definite parcels of this land so shown, he received the purchase price in cash; and that in each instance he deeded the purchasers portions of section 7, being rocky mountainous land which could not be plowed and which was situated at least a mile and a half from the land shown. The appellant admitted that the land shown to these various parties was not the land he deeded to them, and while he claimed that this was the result of a mistake on his part, the money paid by the various parties was never returned. When asked if he did not know that the land he had shown these parties was worth more than the price at which he was pretending to sell it, he replied: "Oh, probably; it all depends." As going to the intent of the appellant, evidence was introduced as to many instances of such sales. Under the authorities above set forth, the verdicts upon the various counts of the second information are sustained by the evidence.

The second point raised is that the trial court has no jurisdiction. In this regard it is contended that the defendants had lawful possession of the various sums of money involved and if any offense is shown, it is embezzle-

ment and that if this occurred, it took place in the county of Los Angeles. We think this argument has heretofore been sufficiently disposed of and that the evidence shows that the various offenses were committed in San Bernardino County, where the respective amounts were obtained.

■ It is next urged that the court erred in admitting evidence of some three or four similar transactions by the appellant with other parties covering the same period of time covered by the transactions set forth in the two informations, the appellant citing *People* v. *King*, 23 Cal. App. 259 [137 Pac. 1076]; *People* v. *Lawlor*, 21 Cal. App. 63 [131 Pac. 63]; *People* v. *Washburn*, 104 Cal. App. 662 [286 Pac. 711]. We find nothing in these cases to support the contention here made. The other transactions referred to were exactly similar to those here involved, and this evidence was properly received to show intent, and also to show a system or design. (*People* v. *Stutsman*, 66 Cal. App. 134 [225 Pac. 477]; *People* v. *Hennessey, supra.*)

■ It is next urged that the court committed prejudicial error by commenting on the evidence. In this connection the appellant tried to introduce in evidence a letter from Mrs. Joachim, written the day after she signed a complaint against the appellant, in which she asked for additional payments. During a discussion between court and counsel over the admission of the letter, the court said:

"I don't think that makes any difference. I think it is true in practically every case where someone has accepted money and there may be some criminal liability back of it, if they can get their money they are willing to abandon the criminal end of the thing. I don't think the fact, if it is a fact, would have any tendency to change the offense in any way. There might possibly be a question of incrimination there or something of that sort."

The letter was not admitted in evidence and it fully appears from the context that the court was discussing the reasons underlying its ruling in not admitting the letter in evidence. The statement complained of was brought forth by a statement on the part of appellant's counsel to the effect that the witness, Mrs. Joachim, was willing to take the money although she had previously signed a criminal complaint. No objections to the remark were made,

and the court was not asked to instruct the jury to disregard it. If the making of this statement can be held to be error, it cannot be held to be sufficiently prejudicial to require a reversal in such a clear case as shown by this record.

■ The point is next made that the district attorney was guilty of prejudicial misconduct. It is first objected that the district attorney wrongfully alluded to the use of two names by the appellant. Not only was this situation shown by the evidence, but necessarily so, as the deeds to the respective parcels of land were issued from the defendants as husband and wife, under the name of Brent, whereas it was admitted their true name was Eley. ■ A second objection is that in his argument to the jury the district attorney said: "Why didn't he tell them he was an ex-convict to start with?" This remark was objected to, whereupon the court instructed the jury to disregard the same. It appears that in his direct examination the appellant had testified that since the events which crystallized into these complaints, he had been convicted of a felony. While the remark should not have been made by the district attorney, it was by him retracted and the jury was instructed to disregard it. Under such circumstances, no reversible error appears.

■ The last point raised is that the verdicts are so defective that they cannot support the judgment. Each of the four verdicts rendered was in substantially the following form:

"We, the jury in the above entitled action, being Information No. 2397 as to Count I. of said Information find the defendant C. W. Eley Guilty and the defendant Ella Eley Not Guilty.

"E. M. CRIST, Foreman."

The point is made that each verdict is insufficient since it did not contain the words "as charged in the information". This contention is without merit.

We have carefully examined the voluminous record and in our opinion no miscarriage of justice has occurred.

The judgment and order appealed from are affirmed.

Marks, J., and Jennings J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 2, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 17, 1932.