[Crim. No. 1936. First Appellate District, Division Two.—March 25, 1937.]

THE PEOPLE, Respondent, v. B. D. MALONE et al., Appellants.

A. E. Warth, C. C. Baker and Roger W. Powers for Appellant Malone.

No appearance for Appellant Bouer.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

SPENCE, J.—Defendants were jointly charged with conspiracy to commit grand theft and with grand theft. Both defendants pleaded not guilty and waived a trial by jury. Upon a trial by the court, both defendants were found guilty as charged and they have appealed from the judgments of conviction and the orders denying their motions for new trial. The first count of the informations charged conspiracy and the remaining five counts charged theft. The conspiracy count alleged five overt acts and each of said five overt acts constituted the basis for one of the subsequent counts charging theft. It was alleged therein that said defendants, together with one Harmon B. Green did unlawfully conspire to commit grand theft and in pursuance of said conspiracy did unlawfully take the building and loan association pass-books of the complaining witnesses, the pass-book in each instance being of a value in excess of $200. Said Harmon B. Green had been previously tried and convicted and is not directly involved in this proceeding. The transcript was filed herein on December 29, 1936, but defendant Bouer has neither filed a brief herein nor presented any argument to this court in

support of his appeal. The appeal of said defendant will therefore be dismissed.

The charges of theft were set forth in general terms as permitted by section 952 of the Penal Code, and the prosecution proceeded to trial upon the theory that defendants were chargeable with both obtaining property by false pretenses and with larceny by trick and device. One of the main contentions of defendant Malone on this appeal is that the evidence was insufficient to show the commission of theft by any of the parties under either theory, but as we are satisfied that the evidence was sufficient to show larceny by trick and device, we shall not endeavor to cover the evidence relating to false pretenses.

The transcript is voluminous and it discloses the operations of defendants Malone and Bouer with respect to several corporations. It is unnecessary to set forth all the evidence relating to these operations but it may be stated that many of the transactions and dealings appear to have been of a most unusual nature.

In 1934, and at a time when the Postal Union Life Insurance Co. was threatened with a revocation of its permit to do business, defendants Malone and Bouer acquired 20,000 of the 25,000 shares of capital stock of said corporation. Immediately thereafter they organized Postal Underwriters, Inc., and while defendant Malone soon withdrew as a director of said company, his wife was made a director and president thereof and it is apparently conceded that defendants Malone and Bouer controlled said company through persons acting nominally as its officers and directors. Green thereafter acted as agent of both the Postal Union Life Insurance Company and the Postal Underwriters, Inc., his salary being paid by the former until June, 1935, and thereafter by the latter. His work was done in the northern part of California and particularly in Monterey County. He worked under the immediate supervision of Bouer but both Green and Bouer consulted with Malone on various occasions.

The alleged thefts were all committed between August 1, 1935, and September 30, 1935. During that time, Green placed an advertisement in the Monterey Peninsula Herald as follows: ''WANTED $30,000 PACIFIC STATES SAVINGS AND LOAN ASSOCIATION PASS–BOOKS OR CERTIFICATES; 100% on the Dollar GUARANTEED. Write

Box 1559, c-o Monterey Peninsula Herald. ACT AT ONCE.'' At that time said pass-books were valued at between 50 and 75 cents on the dollar. Green was asked, ''Did you have any discussion concerning the insertion of ads or advertising for pass-books prior to the insertion of that ad with Malone or Bouer?'' He testified that he had but it is not entirely clear whether his answer related to both or to one or the other of said defendants. In any event Green proceeded to obtain the pass-books of the various complaining witnesses.

The method used by Green in obtaining said pass-books was practically the same in all cases. Green told the holder of the pass-book that he represented the Postal Union Life Insurance Co. and Postal Underwriters, Inc., and that they were buying up the pass-books. He stated that they were ''perfectly responsible'' and if the holder would turn over the pass-book, said holder would receive a life insurance policy for the amount represented by the pass-book and in six months the holder would get dollar for dollar with five per cent or in some cases six per cent interest. In some instances, Green stated that the holder would receive a contract with Postal Underwriters, Inc., as well as the insurance policy with Postal Union Life Insurance Co.

Upon receipt of a pass-book, Green gave to the holder a so-called ''Binding Receipt''. The receipt given to Pearl F. Hamilton is typical of those given to the other complaining witnesses. It read in part, ''Received from Pearl F. Hamilton the sum of Eleven Hundred Thirty Three & 43/100 Dollars as follows As shown by Pass-Book No. 102 being the full premium on a policy for $1133.43 plus Int—(6) mo. End Pac. States Sav & Lon under an application bearing a corresponding number and date with this receipt, to POSTAL UNION LIFE INSURANCE COMPANY, Los Angeles, California.'' This receipt was dated August 29, 1935, and signed by ''H. B. Green Agent''. It contained the further notation, ''Contract & Policy mature Feb 29—1936 plus 5% Int to that date.'' Thereafter an agreement of Postal Underwriters, Inc., signed by M. L. Malone, the wife of defendant Malone, as president, and E. W. Riggs, as secretary, was delivered to Pearl F. Hamilton. Under this agreement Postal Underwriters, Inc., agreed to pay to Pearl F. Hamilton on February 28, 1936, the sum of $1313.20 with interest at 5 per cent and further agreed to pay all premiums on a $1400

life insurance policy with Postal Union Life Insurance Company. It was further provided that "in case of maturity of and payment of said policy to the legal beneficiary at the time of maturity, during the life of this agreement, such payment shall be deemed to be a payment to second party and shall be credited and applied in payment of any money due under the terms of this agreement as fully and to the same extent as if paid by first party to second party in cash". We find no explanation in the record of the discrepancy between the figures in the receipt and the agreement as above set forth.

It must be conceded that it is difficult to determine the exact nature of the transactions from the documentary evidence and other evidence including the evidence of the conversations of Green with the complaining witnesses. It seems clear, however, that in each instance the holder of the pass-book was given to understand that his pass-book was turned over to Green for the definite object of obtaining an insurance policy from the Postal Union Life Insurance Co. and in some instances the holder was given to understand that he would also receive an agreement from the Postal Underwriters, Inc. No insurance policies were ever issued to or received by any of the complaining witnesses, no premiums for such policies were ever paid to the Postal Union Life Insurance Co. by Green, Malone, Bouer or Postal Underwriters, Inc., and no money was ever received by the complaining witnesses from Postal Underwriters, Inc., as agreed. All that any of the complaining witnesses ever received was the "Binding Receipt" and the agreement executed by Postal Underwriters, Inc. The pass-books of the complaining witnesses were sold to F. M. Brown & Co. by either Green or Bouer and a check representing the proceeds of each sale was made out to either Green, Malone or Bouer as payee and forwarded to the payee named.

We are satisfied that the foregoing evidence was sufficient to show that Green was guilty of larceny by trick and device. (*People* v. *Hennessey,* 201 Cal. 568 [258 Pac. 49]; *People* v. *Cook,* 10 Cal. App. (2d) 54 [51 Pac. (2d) 169]; *People* v. *Von Badenthal,* 8 Cal. App. (2d) 404 [48 Pac. (2d) 82]; *People* v. *White,* 124 Cal. App. 548 [12 Pac. (2d) 1078]; *People* v. *Eley,* 121 Cal. App. 53 [8 Pac. (2d) 885].)

█ Under the authorities cited, it appears settled that when a person, with intent to defraud, obtains possession of the property of another upon the understanding that it is to be used for a definite object and fails to so use it, such person is guilty of larceny by trick and device. There was ample evidence to show an intent to defraud on the part of Green as well as the other elements necessary to constitute the offense.

█ But defendant Malone further contends that even if the evidence was sufficient to show that the thefts were committed by Green, it was insufficient to show a conspiracy between Green and defendants Malone and Bouer with respect to said thefts. In support of this contention, defendant Malone sets forth the evidence showing that said defendant had no direct contact with any of the complaining witnesses. Such evidence is not conclusive on the question before us and we are of the opinion that there was ample indirect evidence to sustain the implied finding as to existence of the conspiracy. Indirect evidence is ordinarily all that is available to prove conspiracy and it is sufficient for that purpose. (*People* v. *Coffelt,* 140 Cal. App. 444 [35 Pac. (2d) 374]; *People* v. *Ferguson,* 134 Cal. App. 41 [24 Pac. (2d) 965]; 5 Cal. Jur. 521.)

The remaining contentions of defendant Malone are all directly related to those heretofore discussed. █ They deal with alleged error in overruling objections to testimony covering the conversations of Green with the complaining witnesses, alleged error in denying motions to strike such testimony and alleged error in denying motions based upon the alleged insufficiency of the evidence. As above indicated, we are of the opinion that evidence was sufficient to sustain the implied finding as to the existence of the conspiracy. The evidence of the conversations of Green with the complaining witnesses was therefore admissible as to these defendants (5 Cal. Jur. 522, sec. 25) and we find no error in the trial court's rulings.

The appeal of defendant Bouer is dismissed and the judgments of conviction and the orders denying the motions for new trial are affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 22, 1937.