[Crim. No. 3417.   Second Appellate District, Division One.—February 26, 1941.]

THE PEOPLE, Respondent, v. BENJAMIN F. CRANDALL, Appellant.

Spencer L. Halverson and Harold L. Davis for Appellant.

Earl Warren, Attorney-General, and Gilbert F. Nelson, Deputy Attorney-General, for Respondent.

DORAN, J.—Appellant, charged by information with ten counts of grand theft, with a prior conviction of grand theft and of issuing checks without sufficient funds, was found guilty on each of the ten counts by separate verdicts of the jury returned after trial. Appellant admitted the prior conviction, but appeals from the present judgments and the order denying his motion for a new trial.

The record reveals the following facts: Appellant was released on parole from San Quentin State Prison on or about August 5, 1939. A few days later, while stopping at the Hollywood Roosevelt Hotel, he chanced to meet Mrs. Nellie B. Lantz, a widow past sixty years of age. After her husband's death Mrs. Lantz had been under the guardianship of her attorney from 1932 to 1937, and was then restored to competency by court order in June, 1937, at which time there

was turned over to her property and money to the extent of approximately seventy to eighty thousand dollars. Appellant's acquaintance with Mrs. Lantz appears to have rapidly ripened into a friendship and about September of 1939, Mrs. Lantz began advancing sums of money to appellant. The money appears to have been advanced largely for investment in various business ventures. According to appellant's testimony, he and Mrs. Lantz had decided to become partners and she would furnish the money while he would do the work. According to Mrs. Lantz' testimony, given at the preliminary hearing and read into evidence at the trial, she advanced the money because of representations made to her by appellant, chief of which appears to be his claim to ownership of a large estate in Connecticut, and because appellant seemed to know a number of people she knew and one, whom Mrs. Lantz regarded as a reputable business man, commended appellant to her. Appellant also appears to have played somewhat on Mrs. Lantz' sympathy. From September, 1939, to about June, 1940, Mrs. Lantz advanced to appellant a total sum in excess of $65,000, of which about $10,000 seems to have been placed by appellant in business ventures. There is evidence that during the same period appellant made various personal expenditures, including purchases of jewelry, mostly feminine, in the sum of $10,918.47. One witness, an actress, testified to receiving from appellant during that period, among other things, gifts of jewelry, a fur coat and a Buick car. The evidence further reveals appellant to have been otherwise liberal and his assumed social standard to have been somewhat expensive.

Appellant's principal business ventures were concerned with the publication of certain magazines or periodicals having to do with life in Hollywood and the affairs of the motion picture and radio world. The record as a whole, however, scarcely furnishes a reasonable basis for any inference that appellant's expenditures and some of his activities noted above formed a necessary part of his business career. In any event, the evidence in this respect clearly presented a question of fact for the jury.

The record clearly supports the evident conclusion of the jury that Mrs. Lantz did not intend to make appellant a gift of the money. She held his note or notes to cover the same. The record is also replete with evidence from which the jury might reasonably infer that at the time appellant received

the money he had no intention of ever paying it back and in fact intended at the time to appropriate it as his own. The entire picture presented by the evidence is one of an apparently unscrupulous man taking advantage of an elderly woman plainly incapable of looking after her own affairs. Mrs. Lantz never received her money back from appellant or any value therefor.

By the time of appellant's preliminary hearing before the magistrate on the charges herein Mrs. Lantz had suffered a collapse and was confined to the Rosemead Sanitarium. She was brought in from the sanitarium to testify at the preliminary hearing, which was held on June 24, 1940. On July 9, 1940, she was adjudged insane and ordered confined in the Camarillo State Hospital. No objection was made as to her mental competence to testify at the preliminary hearing and her testimony there given clearly indicates that at the time she was possessed of a sufficient understanding to apprehend the obligation of an oath and to be capable of giving a correct account of the matters in reference to the charges against appellant. At the trial the prosecution introduced evidence of the then existing mental condition of Mrs. Lantz, her confinement in the state hospital, and asked permission to read into the record her testimony given at the preliminary hearing in lieu of calling her to the stand in person. The offer met with objection by appellant on the ground that the prosecution had established by its own evidence that Mrs. Lantz was incompetent to testify at the time of the preliminary hearing, under section 1880 of the Code of Civil Procedure. The objection was overruled and the prosecution was permitted to read the testimony into the record, which ruling appellant assigns as prejudicial error.

Under a statute such as section 1880 of the Code of Civil Procedure, it has been held that a person who can apprehend the obligation of an oath and is capable of giving a fairly correct account of the things he has seen or heard is competent as a witness, although he may be afflicted with some form of insanity. (See 28 R. C. L. 452, sec. 38.) Appellant, however, contends that the burden was upon the prosecution to show that Mrs. Lantz was competent to testify since the prosecution had proven the witness insane at the time of her production, and relies for support of his contention upon the rule that the fact that a person has been recently found of unsound mind by a court of competent jurisdiction and

that he is an inmate of an asylum for the insane is *prima facie* evidence that he is of unsound mind and imposes the burden on the party offering him to show his competency. It should be pointed out that here the adjudication of insanity was made subsequent to the time the witness gave her testimony. Manifestly, the rule relied on is applicable only in situations where the witness has been adjudged insane a short time *before* he is produced. Owing to the nature of insanity, its many forms, varying effects and attendant uncertainties, it would be obviously unjust to apply such a rule in retrospect. ■ Moreover, the character of Mrs. Lantz' testimony given at the preliminary hearing was of itself proof of her competency as a witness at the time; and an adjudication of insanity is not to be taken as conclusive upon the question of the competency of a witness. "The question whether a person is so insane as to be incapable of taking care of his person or property, or criminally irresponsible, does not determine the question whether he is so insane as to be incapable of testifying. Hence, an inquisition of lunacy does not conclusively render the subject incompetent as a witness." (28 R. C. L. 453, sec. 40.) ■ A statement contained in a psychopathic report, based upon an interview with Mrs. Lantz' attorney, that the "onset" of Mrs. Lantz' condition was "approximately six weeks" could be of no significance or importance, under the circumstances, in view of what has already been said here. Indeed such a report, except for impeachment purposes, is pure hearsay. ■ In any event, the question of the admissibility of the testimony of the witness as given at the preliminary, and the competency of the witness as well, was in the first instance addressed to the judgment of the trial judge. There is nothing in the record indicating that the trial judge erred either in judgment or as to the law.

■ Appellant's contention that the court erred in admitting evidence of expenditures and gifts made by appellant, during the period in question, is without merit. Money had been obtained from Mrs. Lantz upon the representation that it would be used or invested in a business venture or in relation thereto, or upon some similar representation. Evidence of the use appellant made of money during that period was clearly pertinent as to the question of the intent with which he had obtained such a large sum of money from Mrs. Lantz. (*People* v. *Stone,* 16 Cal. 369; *People* v. *Eastman,* 77 Cal. 171 [19 Pac. 266].) Appellant's bare statement that he and Mrs.

Lantz were partners has no support in the evidence.    Moreover, it can be of no avail on appeal.

■    Nor is there merit in the contention that the court committed prejudicial error in admitting into evidence a large number of checks, check stubs and the ledger sheet of a brokerage account of Mrs. Lantz.    Appellant claims they have no bearing on the case.    Respondent contends that these records showed that the amounts in the ten counts charged in the information were but a part of the total amount of $65,-407.55 which the appellant obtained from Mrs. Lantz and that they went to show the commission of offenses similar to those charged, and hence the intent with which appellant committed the acts charged.    Respondent's position is well taken and the matter objected to was properly admitted to that end.    (*People* v. *Hennessey*, 201 Cal. 568, 582 [258 Pac. 49] ; *People* v. *Eley*, 121 Cal. App. 53, 59 [8 Pac. (2d) 885].)

In regard to the assignments of error on the part of the court in refusing to give certain instructions requested by appellant, it is sufficient to state that as to the matter of insanity of a witness the requested instruction did not correctly state the applicable rule; and as to all of the said instructions so requested, the points attempted to be raised thereby were fully covered in the instructions given by the court.    As to the manner of weighing the testimony of detectives and other such persons, respondent properly points out that in view of the instructions given on the credibility of witnesses, the opinions of experts and the weight of the evidence, ample instructions were given to guide the jury in weighing the testimony of all the witnesses.

The facts presented to the jury were amply sufficient to justify an inference of appellant's guilt and the verdicts rendered may not be disturbed on appeal.    (*People* v. *Hennessey, supra,* at p. 571.)    Appellant's motion for a new trial was properly denied.

The judgments of conviction are affirmed and the order denying the motion for a new trial is also affirmed.

York, P. J., and White, J., concurred.